## STATE *vs.* WILLIS E. ALMY.

### JUNE 1, 1911.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1) *Intoxicating Liquors. Constitutional Law. Evidence.*

Gen. Laws, 1909, cap. 123, § 52, provides that "the finding of any liquors enumerated in this section upon the premises of any retail druggist or apothecary in quantities exceeding one half gallon shall be considered evidence that the same is kept for sale."

*Held,* that the section was not obnoxious to the provisions of Cons. U. S. Art. XIV of amendments § 1, nor to Cons. of R. I. Art. 1, § 10, for in carrying out a public purpose, while it might be limited in its application, yet within the sphere of its operation it affected all persons similarly situated.

*Held,* further that the intent of the section was to prohibit the keeping of intoxicating liquor in quantities exceeding one half gallon whether it consisted of one kind only or was the aggregate of several kinds.

(2) *Premises of Defendant.*

Held, further that the statute being designed to prohibit the selling and keeping of intoxicating liquor in the shops and stores of druggists, the word "premises" meant the *business premises* of those persons.

(3) *Prima Facie Evidence. Constitutional Law.*

While the court held in *State* v. *Beswick,* 13 R. I. 211, that a provision which

made certain recited circumstances *prima facie* evidence against an accused was unconstitutional, as determining in advance what weight certain facts should have with the jury, in the present statute, the provision that certain facts "shall be considered as evidence that the same is kept for sale" is no more than declaratory of the common law as it existed before the statute, such facts being admissible in evidence against an accused but the weight that should be given them, being for the jury to determine.

CRIMINAL COMPLAINT. Certified on constitutional questions.

DUBOIS, C. J. The defendant was tried in the District Court of the Third Judicial District upon the following complaint: "To Edward G. Cundall, Esq., Clerk of The District Court of the Third Judicial District, in the County of Washington, and State of Rhode Island and Providence Plantations. Cornelius Bransfield, Chief of Police of the town of Westerly in said county, on oath complains, in the name and behalf of the State, that at said Westerly in said county, on the 15th day of December, A. D. 1909, with force and arms Willis E. Almy, alias John Doe, of said Westerly, he the said Willis E. Almy, alias John Doe, being then and there, and for a long time prior thereto, a retail druggist, did then and there keep for sale ale, wine, rum, and other strong and malt liquors, and mixed liquors a part of which was ale, wine, rum and other strong, malt and intoxicating liquors, without first obtaining a licence from the town council of said town of Westerly, against the statute and the peace and dignity of the State.

"And said complainant further complains, on oath in the name and behalf of the state, that at said Westerly, in said county, on said 15th day of December, A. D. 1909, with force and arms, said respondent, Willis E. Almy, alias John Doe, being then and there, and for a long time prior thereto, an apothecary, did then and there keep for sale, ale, wine, rum, and other strong and malt liquors, and mixed liquors a part of which was ale, wine, rum and other strong, malt and intoxicating liquors, without first obtaining a license from the town council of said town of Westerly, against the statute and the peace and dignity of the State." The complaint was brought under the provisions of Gen. Laws, 1909, cap. 123, § 52. During the

trial testimony was offered of the finding, in the shop occupied by the defendant as a retail drug store, of about five quarts of whiskey, one and two-thirds quarts of brandy and one half bottle of Scotch whiskey. The defendant objected to the introduction of the testimony upon the ground that the portion of said section 52 which provides that "The finding of any liquors enumerated in this section upon the premises of any retail druggist or apothecary, in quantities exceeding one half gallon, shall be considered evidence that the same is kept for sale," is unconstitutional. The testimony was admitted, notwithstanding the objection of the defendant, the decision of the question of constitutionality was reserved, and the trial proceeded.

The respondent offered no evidence in his own behalf and was found guilty, but sentence was stayed and the constitutional questions raised were certified to this court for decision, under the provisions of Gen. Laws, 1909, cap. 298, § 2.

(1) The certification contains fifteen specifications of unconstitutionality but at the hearing upon the same before this court, the defendant desired the inquiry to be limited to the consideration of whether the statute in question violates the provisions of section one of the fourteenth amendment to the . Constitution of the United States or those of section 10 of Article one of the Constitution of Rhode Island. Section one, Article XIV of Amendments to the Constitution of the United States reads as follows: "SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." And the provisions of Sec. 10, Article 1 of the Constitution of Rhode Island are the following: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury; to be informed

of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining them in his favor, to have the assistance of counsel in his defence, and shall be at liberty to speak for himself; nor shall he be deprived of life, liberty, or property; unless by the judgment of his peers, or the law of the land."

The defendant thereupon argued as follows: "What is the proper construction of the statute that is now Section 52 of Chapter 123 of the General Laws, 1909.

"The first part of said section provides a penalty for the sale or keeping for sale, by any retail druggist or apothecary, without first obtaining a license, of any ale, wine, rum, or other strong or malt liquors, etc., and later on it is provided that ' the finding of any liquors enumerated in this section upon the premises of any retail druggist or apothecary in quantities exceeding one half gallon shall be considered evidence that the same is kept for sale.'

"It is to be noted that the plural is used in speaking of ' liquors' and ' quantities' but that the provision in relation to evidence is that the same ' is' kept for sale instead of ' are' kept for sale. The provision is the finding of any liquors enumerated not the finding of any ' of' the liquors enumerated. It is not to be presumed that the legislature made a grammatical error. In case of doubt as to the meaning of a criminal statute the doubt must be resolved in favor of the defendant. It follows that the meaning of the statute is that the excess of one half gallon must be of one kind of liquor and not the aggregate of several kinds."

A sufficient reply to the foregoing is that under the provisions of Gen. Laws, 1909, cap. 32, "Of the Construction of Statutes," Sec. 3, it is provided that "Every word importing the singular number only, may be construed to extend to and to include the plural number also; and every word importing the plural number only, may be construed to extend to and to embrace the singular number also."

In our opinion it is the intention of the legislature, as expressed in the section under consideration, to prohibit the keep-

ing of intoxicating liquor in quantities exceeding one half gallon, whether it consists of one kind only or is the aggregate of several kinds.

The defendant further argued that "The finding referred to is upon the 'premises' of a retail druggist or apothecary, not within his shop. 'The dwelling house of a retail druggist or apothecary is as much his premises as his shop. Each is occupied by him, and it cannot be said that in using the general term 'premises' it was intended to include one class or purpose of occupation and exclude another. It is not for the court to read into this statute words that are not there. It therefore follows that if a retail druggist or apothecary has more than two quarts of liquor of one kind in his dwelling-house, it is evidence that it is kept for sale, while his next door neighbor engaged in another occupation may have a much larger quantity without any such presumption being raised. The result is the same if it is held that the Statute applies when the aggregate of all the liquors found exceeds one-half gallon."

(2)    The foregoing argument is more specious than sound. The word *premises* is frequently used in Gen. Laws, cap. 123, but a consideration of its use in secs. 52, 53, 54 and 55 of said chapter, in connection with retail druggists and apothecaries, may be of some assistance. In sec. 52 any retail druggist or apothecary who shall sell or keep for sale intoxicating liquors without first obtaining a license shall be liable to the penalties therein prescribed. The intent and purpose of this section undoubtedly is to prohibit retail druggists or apothecaries from selling or keeping for sale the liquors referred to in their capacity as druggists or apothecaries, that is, in connection with and as a part of their regular business. It is a well recognized fact that an apothecary shop or drug-store furnishes unusual facilities for the sale and keeping of intoxicating liquor. That opportunities for its disguise or concealment abound. That the profits to be derived from unlicensed sales are a sufficient temptation to arouse the cupidity of the avaricious, and to lead them to take the risk incident to the undertaking. That unscrupulous persons have been known to engage in the drug business

ostensibly for the purpose of conducting a legitimate apothecary shop but with the covert purpose of using the same as a cloak or shield for an illegal business. It is not a violent presumption to assume that the general assembly had these considerations in mind at the time of the passage of the statute in question and that its provisions were designed and adapted to counteract such illegal tendencies. It is therefore reasonable to suppose that the selling and keeping of intoxicating liquor was thereby prohibited in the shops and stores of the apothecaries and druggists. Therefore the words "the finding of any liquors enumerated in this section upon the premises of any retail druggist or apothecary" apply to the finding of the same in the shop or store or other portion of the *business premises* of those persons. This construction is strengthened by an examination of the provisions of section 53 whereby the town councils of the several towns, and the boards of license commissioners, may grant or refuse to grant licenses, to be known as druggists' liquor licenses, to such persons as are by law authorized to retail, compound and dispense medicines and poisons, for the sale of pure, spirituous and intoxicating liquors in quantities not to exceed one pint, or in an original package containing not more than one quart, for medicinal purposes only, and not to be drunk on the premises of the seller. In order to ascertain what persons are by law authorized to retail, compound and dispense medicines and poisons it is necessary to examine the provisions of Gen. Laws, 1909, cap. 178 " Of Medicines and Poisons," and we find that under sec. 1. "No person, unless a registered pharmacist, or registered assistant-pharmacist in the employ of a registered pharmacist, or unless acting as an aid under the immediate supervision of a registered pharmacist or a registered assistant-pharmacist, within the meaning of this chapter, shall retail, compound or dispense medicines or poisons except as hereinafter provided." The exception, contained in sec. 10, relates to any practitioner of medicine *who does not keep open shop* for the retailing, dispensing or compounding of medicines or poisions. The statute provides for an examination of the qualification of

applicants for certificates of registration as a registered pharmacist or as a registered assistant-pharmacist, and for the issuance of certificates to properly qualified persons who shall comply with the requirements of the statute. Sec. 6 provides that the certificate shall be used by the person to whom it is issued in but one place of business, but also provides for permission for removal. It thus appears that persons to whom druggists' liquor licenses may be issued must have a place of business, and the words "premises of the seller," in Gen. Laws, cap. 123, § 53, relate to the place of business of such person. Sec. 54 provides for the punishment to be meted out to the retail druggist or apothecary, or any clerk or assistant thereof, who shall upon prohibited days or hours, sell, distribute, give or deliver intoxicating liquors in any retail druggist's or apothecary's shop, unless the same be sold upon and in accordance with the written prescription of a physician and *not to be drunk on the premises.* Sec. 55 relates to similar offences when committed on week days. While it may be said that the dwelling house of a retail druggist is as much his premises as his shop, if he owns them both, he does not own or occupy his house because he is a druggist. His ownership of his house and land is in no way dependent upon his occupation or employment, but he cannot legally occupy the drug store or apothecary shop unless he has the necessary certificate as has already been shown and he is not eligible to receive a druggist's liquor license unless he has a shop, or store wherein it can operate. And if he, as a druggist or apothecary, has a shop or store wherein a druggist's license could operate, if he had one, those are his business premises; and, in case he has no such druggist's liquor license, those are the premises wherein he must not sell or keep for sale intoxicating liquor in prohibited quantities.

We are unable to see wherein the statute under consideration is obnoxious to either of the constitutional provisions hereinbefore referred to.

As was said by Mr. Justice Field, speaking for the Supreme Court of the United States, in *Barbier* v. *Connolly,* 113 U. S. 27, 31 *et seq.:* "The Fourteenth Amendment, in declaring

that no State 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation to life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the employment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offences.    But neither the amendment —broad and comprehensive as it is—nor, any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity.    From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains.    Special burdens are often necessary for general benefits—for supplying water, preventing fires, lighting districts, cleaning streets, opening parks, and many other objects. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good.    Though, in many respects, necessarily special in their character, they do not furnish just ground

of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.

"In the execution of admitted powers unnecessary proceedings are often required which are cumbersome, dilatory and expensive, yet, if no discrimination against any one be made and no substantial right be impaired by them, they are not obnoxious to any constitutional objection. The inconveniences arising in the administration of the laws from this cause are matters entirely for the consideration of the State; they can be remedied only by the State." The definition was quoted and approved in *Yick Wo* v. *Hopkins,* 118 U. S. 356, 367.

In the case at bar no impediment is imposed by the statute to the pursuits of the defendant as a retail druggist or apothecary, except as applied to the same pursuits by others under like circumstances, and no greater burders are laid upon him than are laid upon others in the same calling and condition. This statute comes well within the above definition as "legislation which in carrying out a public purpose is limited in its application" and "within the sphere of its operation affects all persons similarly situated" and is therefore not within the fourteenth amendment.

(3) The defendant claims that the portion of Sec. 52 hereinbefore referred to: "The finding of any liquors . . upon the premises of any retail druggist or apothecary, in quantities exceeding one half gallon, shall be considered evidence that the same is kept for sale," is unconstitutional for the reasons given in *State* v. *Beswick,* 13 R. I. 211, 215, *et seq.* The difference between the statute involved in that case and the one in this, in the respect complained of, is that the former statute *inter alia* made the notorious character of the defendant's premises *prima facie* evidence of his guilt. That is, the legislature determined in advance what weight certain facts should have

with the jury, "so that upon proof of them it is not only the right but the duty of the jury to convict, unless the presumption is rebutted by other evidence." In the present statute under consideration certain facts "shall be considered as evidence that the same is kept for sale." This was nothing more than declaratory of the common law as it existed before the statute. Proof of the quantity, quality, place of keeping and all the circumstances surrounding the finding of forbidden articles in the place of business of a defendant would have been admissible in evidence for the prosecution and against the accused but the weight that should attach to the same was and is clearly within the province of the jury to determine. The circumstances attending the possession of prohibited articles are always matters for the consideration of the jury and so long as the legislature has not attempted to curtail the functions of the jury but has left them to determine the weight of such evidence, the statute cannot be held to be unconstitutional. As was said by Durfee, C. J. in *State* v. *Wilson*, 15 R. I. 182: "Section 3 (of Pub. Stat. cap. 80) as we interpret it, simply makes the reputation of a place evidence of its character, but it leaves the jury free to find the accused guilty or not, according as they are satisfied of his guilt or not by the evidence. We see no reason to think that such an enactment is unconstitutional."

Having thus decided the questions certified to us, the papers in the cause with our decision certified thereon, will be sent back to the District Court of the Third Judicial District for further proceedings.

*Harry B. Agard*, for complainant.
*Clarence A. Aldrich*, for defendant.