

# THE ATTORNEY GENERAL

# OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

December 7, 1950

Hon. Coke R. Stevenson, Jr.
Administrator
Texas Liquor Control Board
Austin, Texas

Opinion No. V-1126.

Re: Constitutionality of
Section 37 of Article
666-17, Vernon's Penal
Code, providing for
restrictions on the
extension of credit
to retail liquor
dealers by whole-
salers.

Dear Mr. Stevenson:

Your letter requesting the opinion of this office is quoted as follows:

"Because the question has been raised a number of times as to the constitutionality of the provisions of Section 17(37) of Article I of the Texas Liquor Control Act, I am herewith requesting your honored opinion regarding same as set out below:

"'(37). It shall be unlawful for any Wholesaler, Class B Wholesaler, Class A Winery or Wine Bottler to sell any alcoholic beverage, nor shall any Package Store Permittee, Wine Only Package Store Permittee, or other retailer purchase any alcoholic beverage, except for cash or on terms requiring payment by the purchaser as follows: On purchases made from the first to fifteenth day inclusive of each calender month, payment must be made on or before the twenty-fifth day of the same calendar month; and, on purchases made from the sixteenth to the last day inclusive of each calendar month, payment must be made on or before the tenth day of the succeeding calendar month. Every delivery of alcoholic beverage must be accompanied by an invoice of sale giving the date of purchase of such alcoholic beverage. In

the event any Package Store Permittee, Wine Only Package Store Permittee or other retail dealer becomes delinquent in the payment of any account due for alcoholic beverages purchased, (that is, if he fails to make full payment on or before the date hereinbefore provided) then it shall be the duty of the Wholesaler, Class B Wholesaler, Class A Winery or Wine Bottler to report that fact immediately to the Board or Administrator in writing. Any Package Store permittee, Wine Only Package Store Permittee or other retail dealer who becomes delinquent shall not be permitted to purchase alcoholic beverages from any Wholesaler, Class B Wholesaler, Class A. Winery or Wine Bottler until said delinquent account is paid in full, and the delinquent account shall be cleared from the records of the Board before any Wholesaler, Class B Wholesaler, Class A Winery or Wine Bottler will be permitted to sell alcoholic beverages to him. Any Wholesaler, Class B Wholesaler, Class A Winery or Wine Bottler who accepts postdated checks, notes or memoranda or who participates in any scheme, trick, or device to assist any Package Store Permittee, Wine Only Package Store Permittee or other retail dealer in the violation of this Section shall likewise be guilty of a violation of this Section. The Board shall have the power and it shall be its duty to adopt rules and regulations giving full force and effect to this Section."

The liquor business, unlike most private enterprises, is regulated by the various States under their police powers. Article 666-2, Vernon's Penal Code, (Art. I, Texas Liquor Control Act) provides that "This entire Act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose." A person may not engage in the liquor business as a matter of right but only when permission to do so is granted by the State. Permission when granted, is in the nature of a revocable personal privilege. As provided in Section 13(b) of Article I of the Texas Liquor Control Act (Art. 666-13, V.P.C.):

"Any permit or license issued under the terms of either Article I or Article II of this Act shall be purely a personal privilege, revocable in the manner and for the causes herein stated, subject to appeal as hereinafter provided, and shall not constitute property, . . ."

In Texas Liquor Control Board v. O'Fallon, 189 S.W.2d 885, 887 (Tex.Civ.App. 1945), the court said:

"A permit, or license, to sell liquor is a mere personal privilege, under the terms of the act itself; all such permits are revocable for causes therein stated, subject to appeal as provided by the act. Such permit, or license, does not constitute property. The acceptance constitutes an expressed agreement and consent on the part of the permittee, or licensee, that the Board or any of its authorized representatives, or agents, may perform any duty therein imposed upon them."

In Texas Liquor Control Board v. Warfield, 122 S.W.2d 669, 670 (Tex.Civ.App. 1938), the court said:

"A package store permit to purchase specified liquor from designated parties and to sell same under the conditions and in the manner prescribed in the Act is neither a contract nor a right of property in the sense in which those terms are used in our Constitution. It is no more than a temporary license to do that which would otherwise be unlawful and may be revoked by the authorized agent of the state whenever it is ascertained that the law has been violated."

A State has the power to regulate liquor traffic and may go so far as to prohibit it. State Board of Equalization of California v. Young's Market Co., 299 U.S. 59 (1936); Mahoney, Liquor Control Commissioner, v. Joseph Triner Corp., 304 U.S. 401 (1938). In the Young's Market case the court held that a provision of the California law imposing a fee of $500 for the privilege of importing beer into the State was not discriminatory against a wholesaler of imported beer. The court said at page 63:

"It might permit the manufacutre and sale of beer, while prohibiting hard liquors

Hon. Coke R. Stevenson, Jr., page 4  (V-1126)

absolutely. If it may permit the domestic
manufacture of beer and exclude all made
without the State, may it not, instead of
absolute exclusion, subject the foreign
article to a heavy importation fee? More-
over, in the light of history, we cannot
say that the exaction of a high license
fee for importation may not, like the im-
position of the high license fees exacted
for the privilege of selling at retail,
serve as an aid in policing the liquor
traffic."

In discussing a constitutional question in the
Mahoney case, the Supreme Court said at page 403:

"The sole contention of Joseph Triner
Corporation is that the statute violated
the equal protection clause. The state of-
ficials insist that the provision of the
statute is a reasonable regulation of the
liquor traffic; and also, that since the
adoption of the Twenty-first Amendment, the
equal protection clause is not applicable
to imported intoxicating liquor. As we are
of opinion that the latter contention is
sound, we shall not discuss whether the stat-
utory provision is a reasonable regulation of
the liquor traffic."

In Cartlidge v. Rainey, 168 F.2d 841, 843 (C.C.
A. 5th, 1948), the Court discussed the reasonableness of
the provision in the Texas Liquor Control Act which per-
mits only licensed common carriers to engage in the in-
terstate transportation of liquor. The court said:

"The effect of the Texas Liquor Control
Act is to confine the business of transport-
ing intoxicating liquors through the state
to those who are licensed as common carriers.
The regulation is reasonable, and appropriate
to the end in view, and we are not authorized
to hold it invalid."

It is our opinion that the provision of the
statute in question is not unreasonable. The provision
(Section 17(37) of Article I of the Liquor Control Act)
is one for the purpose of maintaining the independence
of the wholesale and retail levels of the liquor industry

in Texas. As said in Texas Liquor Control Board v. Continental Distilling Company, 199 S.W.2d 1009, 1014 (Tex. Civ.App. 1947, appeal dism. 332 U.S. 747, 1947):

"The Legislature, in enacting the Texas Liquor Law (Art. 666 P.C.), expressly determined that the liquor traffic in this State would be best controlled by keeping the various levels of the liquor industry independent of each other, . . ."

Statutes of other States provide for restrictions on the extension of credit by wholesalers to retailers, as does Section 37 of Article 666-17, V.P.C. These provisions have been upheld by the courts of such States.

In James J. Sullivan, Inc. v. Cann's Cabins, Inc., 36 N.E.2d 371, 372 (Mass.Sup. 1941), the Supreme Court of Massachusetts upheld the constitutionality of provisions of a Massachusetts statute which made it unlawful for any licensee to lend or borrow money or receive credit, directly or indirectly, to or from any manufacturer, wholesaler or importer of alcoholic beverages, and for any such manufacturer, wholesaler or importer to lend money or otherwise extend credit, except in the usual course of business and for a period not exceeding ninety days, directly or indirectly, to any such licensee or to acquire, retain or own, directly or indirectly, any interest in the business of any licnesee. The court said:

"The prohibition of the statute is not limited by the nature of the thing for which payment is to be made. It is not limited to credit for liquors sold. Its purpose appears to have been to avoid the evils believed to result from the control of retail liquor dealers by manufacturers, wholesalers, or importers through the power of credit. Those evils do not as a rule depend upon the nature of the consideration out of which the credit arose. They depend upon the power of creditor over debtor."

In Sepe v. Daneker, 68 A.2d 101, 102-105 (R.I. Sup. 1949), the Supreme Court of Rhode Island had before it practically the same question that we are now discussing. The court upheld the constitutionality of the provions of the rules of the Liquor Control Administration

of the State of Rhode Island.  We quote the following
from the opinion of the court:

> "The pertinent portions of rules 53 and
> 54 as set out in the statement of facts are
> as follows: '53.  No alcoholic beverages
> shall be sold by any manufacturer or whole-
> saler to any retailer, nor shall any retail-
> er purchase any alcoholic beverages except
> for cash or on terms requiring payment by
> the purchaser within thirty days from date
> of delivery. * * * No manufacturer or whole-
> saler shall sell, except for cash, any alco-
> holic beverages to any retailer with knowledge
> that such retailer is in arrears for the pay-
> ment of alcoholic beverages, as provided by
> this rule; . . . 54.  Written notice shall be
> given by the manufacturer or wholesaler by
> registered mail to each licensee in default of
> payment within five (5) days after the default
> occurs, containing the date of delivery, the
> amount of indebtedness in default, and the
> following statement:  Rule No. 53 of the Liq-
> uor Control Administration prohibits you from
> accepting delivery of any alcoholic beverages
> from any manufacturer or wholesaler except for
> cash, until you have paid in full, the amount
> of the default shown in the notice.  Each man-
> ufacturer and wholesaler shall notify the
> Liquor Control Administration of each default
> within five days, and shall file with him a
> copy of each written notice required to be
> mailed to the licensee within five days after
> default occurs.' . . .

> "In support of his principal contentions
> on the issue of the constitutionality and in-
> validity of the rules the complainant relies
> on the law as set out in cases, both federal
> and state, of which Lawton v. Steele, 152 U.S.
> 133, 14 S. Ct. 499, 38 L. Ed. 385, is an ex-
> ample.  In so doing he has overlooked or dis-
> regarded the nature of the business in which
> he himself is engaged.  The cases above re-
> ferred to, in their general references to the
> public interest and to arbitrary and unreason-
> able interference by way of unnecessary re-
> strictions on private business, will be found
> on examination to apply to the ordinary pri-
> vate enterprises not requiring a license.

"The complainant, however, is engaged
in the business of selling at retail alcoholic
beverages under a duly granted license.  That
license he holds subject to the laws of this
state and to the rules and regulations of the
liquor control administration.  It has been
decided that, generally speaking, a licensee
takes his license subject to such conditions
as the legislature sees fit to impose.  Child
v. Bemus, 17 R.I. 230, 21 A. 539, 12 L.R.A.
57.  Further in Tisdall Co. v. Board of Alder-
men, 57 R.I. 96, at page 103, 188 A. 648, at
page 652, this court stated:  'But it is well
settled in this State and elsewhere that the
business of the sale of intoxicating liquor
is so clearly and completely subject to exer-
cise of the police power of the State that it
may even be entirely prohibited by the State
* * * or it may be permitted subject to such
restrictions and burdens, however great, as.
the State Legislature may deem it advisable
to impose,' . . . 'it has been universally
held that such regulation is especially with-
in the province of such police power, which
even extends to the prohibition of such sale;
and the courts have always been particularly
liberal in sustaining the constitutionality
of such regulation.'  It also is settled in
this state that a liquor license is not a
property right.  Casala v. Dio, 65 R.I. 96,
13 A.2d 693.

". . . Keeping in mind the nature of
the business in which the complainant is en-
gaged and the limitations imposed thereon by
established law we find that his contention
is not sound.  It appears to be his position
in substance that rules 53 and 54 are not in
the public interest generally and that they
constitute an arbitrary deprivation of his
property rights contrary to the due process
clause of section 1 of Article XIV of the
amendments to the constitution of the United
States.

"However, it is well settled that the
privileges or immunities referred to in that
section do not include the business of selling
intoxicating liquor.  In Crowley v. Christen-
sen, 137 U.S. 86, at page 91, 11 S.Ct. 13, at

page 15, 34 L.Ed. 620, the court, in discussing the nature of that business, said:  'The manner and extent of regulation rest in the discretion of the governing authority. . . . It is a matter of legislative will only.'  See also Bartemeyer v. Iowa, 18 Wall. 129, 85 U.S. 129, 21 L. Ed. 929; State v. Almy, 32 R.I. 415, 79 A. 962. The amendment though broad and comprehensive was not designed to interfere with the proper exercise of the police power by the State.  Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923.  We have hereinbefore referred to the fact that there is no property right in a liquor license.  Further the rules in question apply alike to all retail licensees and are not discriminatory."

In view of the above it is our opinion that Section 37 of Article 666-17, V.P.C., providing for restrictions on the extension of credit to retail liquor dealers by wholesalers, is constitutional.

## SUMMARY

Section 37 of Article 666-17, V.P.C. (Sec.17(37), Art. I, Texas Liquor Control Act), providing for restrictions on the extension of credit to retail liquor dealers by wholesalers, is constitutional.

APPROVED:

Ned McDaniel
State Affairs Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

CBK:mw

Yours very truly,

PRICE DANIEL
Attorney General

By Clyde B. Kennelly
      Assistant