C. TISDALL COMPANY *et al. vs.* BOARD OF ALDERMEN OF THE CITY OF NEWPORT *et al.*

DECEMBER 15, 1936

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

Moss, J.   This case, begun by a bill in equity for an injunction, has been certified to us, under the General Laws of 1923, Chapter 348, Section 1, for the hearing and determination of four questions, raised upon the record therein, as to the constitutionality of those parts of Public Laws of 1933, Chapter 2013, as amended by Public Laws of 1936, Chapter 2338, which regulate the issuing of licenses for the sale at retail, in sealed packages, of intoxicating beverages for consumption elsewhere than on the premises where they are sold.

The act in question, as originally passed and as amended, defines "beverages" as "Any liquid which either by itself or by mixture with any other liquid or liquids is or may become fit for human consumption as a drink and which contains .5 of one percentum or more of alcohol by weight."   It forbids, under penalties, any person, at any time, to "sell or suffer to be sold . . . or to be kept on his premises . . . or under his charge for the purpose of sale within this State any beverage unless licensed as hereinafter provided."   Several kinds of licenses are described in Sec. 5, as amended by Public Laws of 1934, Chap. 2088, the kind granted to all of the eighteen complainants in this case, and now held by them according to the allegations of the bill, being as follows:   "Retailer's License—Class A.   Such a license shall authorize the holder thereof to keep for sale and to sell at the place therein described beverages at retail and to deliver the same in a sealed package or container, which package or container shall not be opened nor its contents consumed on the premises where sold; *provided,* that the sale of any quantity of beverages to a non-license holder shall constitute a sale at retail; *and provided further,* that the foregoing provision shall not be construed to limit the powers of the commission to issue licenses on condition nor to make rules and regulations as hereinafter provided.   The

annual fee for such license shall be four hundred dollars prorated to the year ending December 1 of every calendar year."

By Public Laws of 1933, Chap. 2013, as amended in 1934, there was no other restriction as to licenses of this class, which were grantable in any city or town of the State, except in Hopkinton, where the people had voted against the issuing of any licenses. By Public Laws of 1936, Chap. 2338, the above Chap. 2013, as previously amended, was further amended by adding, after the above Sec. 5, two new sections, 5A and 5B, to go into operation on December 1, 1936. The former of these and the parts of the latter which are pertinent in this case are as follows: "Sec. 5A. The provisions of Section 5 of this act shall apply only to towns having a population of ten thousand inhabitants, or less, according to the federal census of 1930.

"Sec. 5B. In cities and towns having a population in excess of ten thousand inhabitants, according to the federal census of 1930, there shall be several classes of beverage licenses each of which shall authorize the doing of the things herein stated immediately after the name of the license as follows:

"Retailer's License—Class A. Such a license shall authorize the holder thereof to keep for sale and to sell at the place therein described beverages at retail and to deliver the same in a sealed package or container, which package or container shall not be opened nor its contents consumed on the premises where sold; *provided,* that the holder thereof if other than a person entitled to retail, compound and dispense medicines and poisons shall not, on the licensed premises, engage in any other business, keep for sale or sell any goods, wares, merchandise, or any other article or thing except the beverages authorized under this license and non-alcoholic beverages; *provided,* however, that a person, firm or corporation may obtain a limited Class A license to sell beer, lager and ale on the

same premises as other goods, wares, merchandise and articles are sold; and *provided, further,* that no such license shall be granted for any premises unless said premises shall constitute a separate store the entrance or entrances to which shall be exclusively from the street or streets or arcade. Said premises aforementioned shall have opaque walls which shall completely partition and sever said premises from any adjoining market, concession or business; and *provided, further,* that the foregoing provision shall not be construed to limit the powers of the commission to issue licenses on condition nor to make rules and regulations as hereinafter provided. The annual fee for such license shall be five hundred dollars.

"Class E. Such a license shall authorize a person entitled to retail, compound, and dispense medicines and poisons to keep for sale and to sell at the place therein described beverages not to exceed one quart each for medicinal purposes and only upon the prescription of a duly licensed practicing physician; *provided,* that such a license shall not authorize the doing of any act in violation of any law of the United States. The annual fee for such license shall be ten dollars. It is permissible for the holder of a retailer's class E license to hold a retailer's class A license; *provided, further,* that no class A license shall be granted to a holder of a class E license unless said holder of a class E license maintains, operates, manages or conducts a drug store. Said drug store shall be operated as a self-contained and independent establishment and shall not be located in or be operated as a part of any market, department store or hardware store. For a class A license as above described, such holder of a class E license shall pay the regular annual license fee and shall have the full privilege of such a class A license.

"After December 1, 1934, not more than one retail license, except in the case of a retailer's class E license, shall be issued for the same premises."

Public Laws of 1933, Chap. 2013, Sec. 5, as amended in 1934, contains a paragraph as to a class E license which is very similar to the corresponding paragraph above quoted from the latest amending act. There are differences in the former, but the complainants have made no point of these differences as supporting their contention that portions of the amended act are unconstitutional. Therefore there seems no reason for stating in this opinion these differences, which seem to us of no importance in this case.

The bill of complaint was brought against the mayor and board of aldermen of the city of Newport acting as license commissioners, in whom, by the provisions of the act, are the right, power and jurisdiction to issue for that city the classes of licenses involved in this case; and also against three other persons named, who are described in the bill as members of the alcoholic beverage commission, in which by the terms of the act as originally passed were the power and duty of enforcing the act and various other powers and duties thereunder.

However, by Public Laws of 1935, Chap. 2250, this commission was abolished and its powers and duties were transferred to the division of intoxicating beverages in the department of revenue and regulation. It was provided that there should be a chief of this division, who should enforce the provisions of the above mentioned Chapter 2013 of the Public Laws of 1933; that within this division there should be a bureau of importation and a bureau of inspection, with a superintendent in charge of each of them; and that the chief of the division, as chairman, and the superintendents of these two bureaus should have power to hold and conduct all hearings on appeals and make decisions thereon, a power which was formerly vested in the alcoholic beverage commission. The three respondents who are described in the bill as members of that commission were at the time of the filing of the bill and still are respectively the chief of the division of in-

toxicating beverages and the superintendents of the bureaus therein above mentioned. This they have pointed out in a demurrer which they and the other respondents filed to the bill of complaint, on numerous grounds to the effect that the bill discloses no equity in the complainants nor in any of them to the relief prayed for and that it does not show that the act in question is unconstitutional, in any of the parts complained of, on any of the grounds set forth.

The complainants set forth in their bill that they are engaged in the grocery, meat and delicatessen businesses in the city of Newport; that they are all holders of retailers' class A licenses, which were issued to them by the license commissioners of that city under the provisions of Public Laws of 1933, Chap. 2013, Sec. 5, which will expire December 1, 1936, and which they wish, and have applied, to have renewed for the next year; that such license commissioners have given notice to all holders of such class A licenses in Newport who desire to renew them to prepare the premises, for which licenses will be applied, in accordance with the requirements of the statute as amended; that they are informed and believe and therefore allege that such license commissioners do not intend to grant or renew any such licenses to the complainants, unless their premises are prepared accordingly; and that such preparation will be a great hardship and expense to them and the requiring of it will prevent many of them from continuing to sell beverages under such licenses.

In their bill they assert, in substance, that the provisions of the amending act of 1936 that relate to the new conditions under which retailers' class A licenses may be granted are unconstitutional and void, because they cause certain provisions of the amended act, that relate to the conditions under which such licenses may be granted, to be in violation of that part of Section 1 of the fourteenth amendment to the Constitution of the United States which provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

Two of the reasons alleged for such violation are that such provisions make an unfair, unjust, arbitrary and capricious discrimination, as to the requirements and burdens imposed, between those to whom retailers' class A licenses may be granted in towns having a population, under the federal census of 1930, of ten thousand or less, and those to whom they may be granted in cities and towns having such a population in excess of ten thousand; and that they do so between persons entitled to retail, compound and dispense medicines and poisons and others, like the complainants, who are in the business of selling other goods, wares and merchandise not coming within the purview of the act.

Another reason given for such provisions being in violation of such equal protection clause is that the restrictions and conditions imposed upon the complainants for the renewal of their licenses "are so stringent, burdensome and unreasonable as to be prohibitive", and so deprive them of their property and rights as to be in violation of such equal protection clause. It is also alleged in the same paragraph of the bill that if these provisions are enforced by the license commissioners in the city of Newport "it will greatly diminish the revenue" to that city "and materially affect the taxes to be levied therein." But it is well settled in this State and elsewhere that the business of the sale of intoxicating liquor is so clearly and completely subject to exercise of the police power of the State that it may even be entirely prohibited by the State, thus eliminating all public revenue therefrom—*State* v. *Fitzpatrick*, 16 R. I. 54, 57, and *Mugler* v. *Kansas*, 123 U. S. 623, and cases cited therein—or it may be permitted subject to such restrictions and burdens, however great, as the State legislature may deem it advisable to impose, so long as they are not discriminatory in such a way as to be in violation of the equal protection clause of the fourteenth amendment and the procedure is not such as to violate its due process clause. Therefore, we need not further consider these two assertions in the bill.

The complainants also assert in their bill that under Sec. 16 of the act, as amended by Sec. 2 of the 1936 amending act, the license commissioners of the city of Newport would be entitled to issue only seven retailers' class A licenses, except for this final provision in Sec. 2 of the amending act: "This section shall not apply to any license holder whose license was issued prior to the passage of this act"; and that this amendment is inconsistent with the other provisions of the act, since it authorizes the license commissioners "to disregard said provisions as to the number of licenses, so long as the present licensees, including the complainants, see fit to apply." Just what conclusion they wish the court to draw from this assertion is not clear to us. But if it is that any part of the amended act is unconstitutional because it discriminates in favor of present holders of retailers' class A licenses and against other applicants for such licenses, the brief but conclusive answer is that it is well settled that a person cannot attack the constitutionality of an act on the ground that it discriminates, no matter how arbitrarily and unreasonably, to the detriment of others. *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571; *Sayles* v. *Foley, Blomquist,* 38 R. I. 484, 497. Still more clearly he cannot do so if the discrimination is in his own favor.

The complainants also assert in their bill that the provisions attacked by them are unconstitutional because they are in violation of Article IV, Sec. 10 of the constitution of this State, *viz.*: "The general assembly shall continue to exercise the powers they have heretofore exercised, unless prohibited in this constitution." The question of the unconstitutionality of these provisions on this alleged ground is included among the questions certified to us by the Superior Court, but this ground is not pressed in the complainants' brief, and was, we believe, not pressed in the oral arguments before us. Moreover we cannot see that this section of the Rhode Island Constitution has any bearing on the issues presented in this case. Therefore,

we cannot find that any of these provisions is unconstitutional because of that section.

The substantial relief prayed for in the bill is that the provisions of the amending act that relate to the new conditions under which retailers' class A licenses may be granted be declared to be unconstitutional, null and void; and that the respondents be enjoined from enforcing these provisions; and also from refusing to grant licenses to the complainants on the ground that they have not complied with the requirements that the premises upon which beverages are to be sold under such a license be a separate store, the entrance or entrances of which shall be exclusively from the street or streets or arcade, and that such premises shall have opaque walls which shall completely partition and sever such premises from any other place of business.

After the demurrer above mentioned was filed, the Superior Court, by a decree, certified to this court for hearing and determination four questions, stated in such decree, as to the constitutionality of the provisions set forth in Sec. 5A of the amended act and those provisions of Sec. 5B of such act which we have quoted *supra*. Eliminating the objections to their constitutionality which we have disposed of *supra*, there remain, of the questions certified, only two still to be disposed of. The first of these is whether the above provisions violate the equal protection clause of the fourteenth amendment to the federal constitution because of the discrimination made between towns having a population of ten thousand or less according to the federal census of 1930 and cities and towns having a population in excess of ten thousand according to such census, in that the provisions of Sec. 5 relating to retailers' class A licenses are made to apply only to the former towns and that the provisions of Sec. 5B relating to such licenses are made to apply only to the latter cities and towns. The second question is whether the above-quoted provisions of Sec. 5B violate that clause

because of the discrimination made in such provisions between grantees of such licenses who are persons entitled to retail, compound and dispense medicines and poisons and other grantees of such licenses who are not such persons.

In this court the respondents have filed a motion to dismiss the certification on the ground that the complainants had not been in any way injured by reason of the provisions attacked by them; that they had not been denied any licenses by the license commissioners of the city of Newport, before whom they should have appeared; and that in effect the complainants have asked the court to render a decision giving them a writ of mandamus.

It is true that the effective date of Secs. 5A and 5B of the act as amended is December 1, 1936, and that the complainants do not allege that any of them have been refused licenses on account of the provisions complained of by them. But they do allege that they desire to have their present licenses renewed and that they have been notified by the license commissioners, in substance, that, if they desire to have their licenses renewed, they must prepare, in accordance with the requirements of Sec. 5B, the premises as to which they will apply for licenses. In other words, they have practically been told by the license commissioners that retailers' class A licenses will be refused to them unless such premises are made to comply with those requirements; and they allege in their bill that to comply with those requirements will be impracticable for most of them.

There is very good authority to the effect that a bill in equity may be maintained to enjoin the enforcing officers from enforcing an unconstitutional statute or ordinance, when and so far as it is being *or is about to be applied* to the complainants' substantial detriment.

In *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, at 289, the court says: "Besides, a litigant can be heard to question a statute's validity only when and so far as it is

being or is about to be applied to his disadvantage." This is quoted and applied in *Utah Power & Light Co.* v. *Pfost,* 286 U. S. 165, at 186. In 1 Spelling on Injunctions and Other Extraordinary Remedies, (2d ed.), 15, § 12, the author says: "But it is not essential to the granting of equitable relief, that irreparable injury should have already resulted from the acts complained of. It is only required that the damage is threatened or impending, and that a clear necessity be shown for affording immediate protection to some right or interest which would otherwise be seriously injured or impaired." At page 504, § 609, the same author says: "The general rule governing the jurisdiction in equity against public officers is that equity will interpose in behalf of individuals to restrain all illegal and unauthorized acts by them under color and claim of official authority which tend to impair public rights or will result in irreparable or serious injury to private citizens, or when preventive relief is necessary to prevent a multiplicity of suits."

Therefore, as we are inclined to view the matter, the economic interests of the complainants here were, according to their allegations, so adversely, immediately and substantially affected by the provisions in question, at the time when the instant suit was brought, that they were entitled to have determined therein the questions of the constitutionality of these provisions. It is also in the public interest that these questions should be determined at this time. Hence, without going exhaustively into the matters of the correctness and the application of the rule above discussed, we are of the opinion that we should dispose of the instant case upon the merits of these questions and not upon the respondents' motion to dismiss.

As to the matter of the constitutionality, under the equal protection clause of the fourteenth amendment to the federal constitution, of the discriminations relied upon by the complainants, the general principles of law applicable to a discrimination between persons of a certain class

in certain local divisions of a State and persons of the same class in other local divisions, and to a discrimination between two classes of persons in the same localities, seem to be well settled.

The provisions here, the constitutionality of which is in question in the instant case, are exercises of the police power of the State in the regulation of the sale of intoxicating liquors and it has been universally held that such regulation is especially within the province of such police power, which even extends to the prohibition of such sale; and the courts have always been particularly liberal in sustaining the constitutionality of such regulation.

Some rules of law applicable to the exercise by a State legislature of its police power have been well stated by this court in *City of Providence* v. *Stephens*, 47 R. I. 387, 133 A. 614, a case in which a provision of an act authorizing zoning ordinances that exclude business and industrial activities from certain sections of a city was sustained as a valid exercise of the police power. There this court, in 47 R. I. at page 393, says: "It has, however, been the position of this court, frequently expressed, that 'if a state of facts could exist which would justify legislation it is to be presumed that it did exist.'" A little later in the opinion this court says: "We cannot say that the respondent at bar has established beyond a reasonable doubt that the provision in question has no just relation to a legitimate exercise of the legislative power; and that burden is upon him when he attacks the constitutionality of the provision."

In *Euclid* v. *Ambler Co.*, 272 U. S. 365 (1926), which was also a suit to enjoin the enforcement of a zoning ordinance, it was held that such a suit need not be preceded by any application on the complainant's part for a building permit or for relief under the ordinance from the board which administered it. At page 388, the court says: "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment

must be allowed to control." At page 395, the court says that "the reasons are sufficiently cogent to preclude us from saying, as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." This latter rule is affirmed in *Gorieb* v. *Fox,* 274 U. S. 603, 610, and in our judgment it is clearly the rule to be applied in the instant case.

The matter is excellently covered by the following statement in the unanimous opinion of the court in *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61 at 78, (1910): "The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

As to the discrimination made by the provisions in question here between the requirements and conditions imposed upon the persons to whom retailers' class A licenses may be granted under Sec. 5 and Sec. 5A in towns having a population of ten thousand inhabitants or less, according to the federal census of 1930, and those imposed upon the persons to whom such licenses may be granted under

Sec. 5A and Sec. 5B, in cities and towns having a population in excess of ten thousand inhabitants, according to the same census, we cannot properly say that such discrimination is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.

For all that we can see, there may be very good reasons, having substantial relation to the public health, safety, morals or general welfare, why such more burdensome requirements and conditions, as are imposed on such licensees in the more populous and thickly settled cities and towns, should not be imposed on such licensees in the towns where the population is less and is more scattered, where very possibly licensed drug stores are fewer in proportion to the population and are much farther apart and comparatively few sellers of food maintain delivery services, and where the sale of intoxicating liquors on the same premises with foods may reasonably be thought less likely to be objectionable than in the cities and towns of larger population. Similar reasoning will also justify imposing a higher fee for such licenses in the cities and towns of larger populations.

Of course there may well be borderline cases where it is not easy to justify the discrimination theoretically. For instance, one town might have just under ten thousand inhabitants and another might have just over that number. But if such a discrimination may constitutionally be made on the basis of population, as it clearly may be, the line must be drawn *somewhere* and probably there will always be borderline cases, wherever it is drawn. Therefore the existence of such cases cannot be given weight in determining the validity of the discrimination. This matter of classifications based upon numbers is well discussed in *Borgnis* v. *The Falk Company,* 147 Wis. 327, at 355, and in *Jeffrey Mfg. Co.* v. *Blagg, supra,* at 578, both of which are quoted from, with approval, on this matter, in *Sayles* v. *Foley, Blomquist,* 38 R. I. 484.

In that case this court, at page 491, quotes with approval from *Jeffrey Mfg. Co.* v. *Blagg,* at page 570, as follows: "This court has many times affirmed the general proposition that it is not the purpose of the Fourteenth Amendment in the equal protection clause to take from the states the right and power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority."

The best discussion that we have found of the matter of classification based upon numbers is in *State* v. *Evans,* 130 Wis. 381, 110 N. W. 241, (1907). There a statute prohibited the independent practice of pharmacy by an assistant-pharmacist in communities of five hundred population or more, but permitted it in communities of less than that population. It was argued by counsel that the life and health of persons in the less populous communities needed as much protection against incompetent dispensers of drugs as in the more populous communities; but the court held that the discrimination was not contrary to the equal protection clause of the fourteenth amendment.

At page 385, (110 N. W. 242), the court says: "That there are distinctions between large and dense communities and small and sparser ones as separate classes is, of course, obvious. That such differences are germane and relevant to some purposes of legislation has been declared, almost without limit, by courts. . . . Those subjects rest with the legislature, and only when the court, in the exercise of the utmost deference toward that other branch of the government, is compelled to say that no one in the exercise of human reason and discretion could honestly reach a conclusion that distinctions exist having any relation to the purpose and policy of the legislation, can it deny its validity."

At page 386 (243), the court says: "Neither need we be disturbed by the fact that the line of demarcation between the classes is arbitrary. Wherever there is a

sliding scale of age, population, dimension, distance, or other characteristic which is believed to justify classification, necessarily the division between classes must be arbitrary, and legislation is not to be declared void which adopts the age of twenty-one as marking the right to vote or manage property because the individual at twenty years and eleven months may be as competent as at twenty-one, nor, in a law distinguishing by population, because no appreciable difference can be conceived between the town of 999 and the town of 1,000, provided, generally, the class of those under twenty-one years of age are less competent to vote or manage property than the class of mankind above that age, or the class of towns which do not include villages of 1,000 population are generally less in need of the governmental powers conferred upon villages than the class of towns which do contain villages of 1,000 and upward."

The complainants attack the discrimination because its basis is the population under the federal census of 1930; but that is now the last federal census and we cannot properly hold that it is unreasonable and arbitrary for the general assembly to make that the standard. We therefore hold that the discrimination is not unconstitutional on this ground.

For the reasons we have given, we hold that the discrimination based on population must be deemed to be not in violation of the equal protection clause of the fourteenth amendment to the federal constitution.

As to the discrimination between persons entitled to retail, compound and dispense medicines and poisons and other grantees of retailers' class A licenses in cities and towns of more than ten thousand inhabitants, the amended act provides, in substance, that any holder of such a license who is not a person so entitled shall not, on the licensed premises, engage in any other business or sell anything except the beverages authorized under the license and non-alcoholic beverages. The only exception is that any per-

son, firm or corporation may obtain a limited class A license to sell beer, lager and ale on the same premises where other goods, wares and merchandise are sold. The act then provides, in the same paragraph, that no such license shall be granted for any premises, unless they constitute a separate store, with an entrance or entrances only from a street or streets or an arcade, and that they must be separated completely from any adjoining place of business by opaque walls.

Except for the limited restriction next stated herein, the grantee of a retailer's class A license who is a person entitled to retail, compound and dispense medicines and poisons is not forbidden by the act to sell any things other than the beverages covered thereby; and he may also be granted, for a fee of ten dollars, a class E license, authorizing him to sell beverages covered by the act, not exceeding one quart each, for medicinal purposes upon the prescription of a duly licensed practicing physician. The only restriction on the granting of both kinds of licenses to him is that he must maintain, operate, manage or conduct a drug store operated as a self-contained and independent establishment, not located in or operated as a part of any market, department store or hardware store.

In determining whether this discrimination, between such a person and other grantees of retailers' class A licenses, is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare, attention may well be given first to what a person must do to be entitled by the law of this State to retail, compound and dispense medicines and poisons.

By G. L. 1923, Chap. 167, Sections 1, 2, 5 and 9, as amended by P. L. 1926, Chap. 794, Section 1 and Sec. 4, and by P. L. 1932, Chap. 1962, it is provided that no person with the exception of a practitioner of medicine who does not keep open shop for the retail dispensing or compounding of medicines and poisons, and with some other exceptions not important in this connection, shall retail,

compound or dispense drugs, medicines or poisons, unless he is a registered pharmacist or a registered assistant-pharmacist assisting a registered pharmacist and under his supervision or is acting as an aid under the immediate supervision of a registered pharmacist or a registered assistant-pharmacist. By Sec. 2 of the same act as amended severe requirements are imposed on any person, as to his education, training and experience in pharmacy, before he can be a registered pharmacist and quite severe requirements before he can be even a registered assistant-pharmacist.

In order for a person to keep his registration in effect he must annually obtain its renewal, which may be refused in the discretion of the authority entitled to grant it; and it may at any time be revoked for good and sufficient cause. The act, as amended, also provides that no person, partnership or corporation shall keep and maintain any open shop or store for retailing, compounding or dispensing drugs, medicines or poisons without having a license to do so, issued to the registered pharmacist at such shop or store, which may be refused or revoked. It may be noticed, also, that the discrimination in question seems only in favor of individual persons and not of partnerships or corporations.

In our judgment it can reasonably be held that these requirements which must be satisfied before a person can be entitled to retail, compound or dispense medicines and poisons, and before a person, firm or corporation can operate a drug store, furnish a reasonable basis for the discrimination in question, which the general assembly has made, between a person so entitled and other grantees of retailers' class A licenses, not affected by any such requirements. Another motive that in our judgment may fairly and reasonably have influenced the general assembly to impose the restriction which it did upon other persons and not to impose it upon persons entitled to retail, compound and dispense medicines and poisons is that it deemed it

more in the public interest, for obvious reasons, that if the purchase, for home consumption, of alcoholic beverages other than beer, lager and ale, is to be associated in the minds of the public with the purchase of any other articles, it should be with the purchase of medicines or poisons rather than with the purchase of other articles for home use or consumption, such as foods.

The complainants seem to rely considerably on some language in the opinion of this court in *State* v. *Almy*, 32 R. I. 415, (1911), but we find nothing therein which is at all opposed to our conclusion in the instant case and much which supports it. There a statutory provision, that "the finding of any liquors enumerated in this section upon the premises of any retail druggist or apothecary in quantities exceeding one-half gallon shall be considered evidence that the same is kept for sale", was held not to violate the equal protection clause of the fourteenth amendment. At page 423, this court says: "In the case at bar no impediment is imposed by the statute to the pursuits of the defendant as a retail druggist or apothecary, except as applied to the same pursuits by others under like circumstances, and no greater burdens are laid upon him than are laid upon others in the same calling and condition. This statute comes well within the above definition as 'legislation which in carrying out a public purpose is limited in its application' and 'within the sphere of its operation affects all persons similarly situated' and is therefore not within the fourteenth amendment."

In *Murphy* v. *Bergin*, 118 Conn. 249, 171 A. 433, (1934), a statute which permitted sales of alcoholic beverages under druggists' permits without restriction as to hours or days, whereas sales by others under package store permits were restricted in both these respects, was held not to be invalid because of the discrimination, in view of the additional requirements applying only to applicants for druggists' permits. At page 262, the court says: "The fact that under druggist permits sales of alcoholic liquor may

be made without restriction as to hours or days, whereas sales under package store permits are restricted in both ways, does not bring about an unlawful discrimination. Those applying for druggist permits are subjected to an additional requirement not applicable in the case of other permits, tending to restrict such permits to persons of a peculiar responsibility, because they must present a certificate of fitness from the pharmacy commission before a permit may issue. Drug stores, by keeping open long hours and on all days, serve a very real public need. The legislature might reasonably conclude that it would be unwise to restrict them as to the hours or days during which they might be open or might dispense prescriptions or sell medicinal compounds containing alcoholic liquor; and it might well deem that it would be impracticable or unnecessary to separate their functions in serving such a need from the selling of alcoholic liquors intended for beverage purposes. We cannot say that the legislature did not have a reasonable basis for the distinction it made in the exercise of rights under the two classes of permits, and we cannot therefore hold that it did not have the power to make that distinction."

For these reasons we are of the opinion that we cannot properly find that the discrimination, made by the general assembly in the provisions now in question, between persons entitled to retail, compound and dispense medicines and poisons and other grantees of retailers' class A licenses is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.

Our decision is that those provisions of Chapter 2013 of the Public Laws of 1933, as since amended, of which the constitutionality has been brought in question upon the record in this case, are not nor is any of them unconstitutional by reason of being in violation of Section 1 of the fourteenth amendment to the constitution of the United States or of Sec. 10 of Article IV of the constitution of this

State or by reason of any other objection to their constitutionality, or to the constitutionality of any of them, appearing upon the record in this case.

The papers in the cause, with our decision certified thereon, are ordered to be sent back to the Superior Court for the County of Newport for further proceedings.

*Sheffield & Harvey, William R. Harvey, Leo L. Tobak,* for complainants.

*Michael F. Costello,* Chief of the Division of Intoxicating Beverages, *William G. Troy,* Solicitor for the Commission, *Theodore Jaffe, Marshall B. Marcus,* for respondents.