**WOMEN & INFANTS HOSPITAL**

v.

**CITY OF PROVIDENCE et al.**

No. 85–381–Appeal.

Supreme Court of Rhode Island.

June 25, 1987.

Steven E. Snow, Tillinghast, Collins 7 Graham, Providence, for plaintiff.

Edward C. Clifton, City Sol., Martin Aisenberg, Jones & Aisenberg, Christophe J. Burke, Providence, for defendants.

OPINION

KELLEHER, Judge.

The facts in this controversy are not in dispute. In 1979 the Providence City Council enacted an antidiscrimination ordinance.[1] The council did not seek, nor was it granted, specific authorization for, or ratification of, the enactment of the ordi-

---

1. Ordinance 1979, ch. 79–1, §§ 1–34, codified in the Providence Code as Article II Discrimination, §§ 16–51 through 16–84, prohibited discrimination in housing, employment, education, public accommodation, and credit practices on the basis of race, color, sex, religion, marital status, handicap, age, or country of ancestral origin. It also established a commission that was empowered to investigate and hold hearings concerning charges of discriminatory practices and to issue remedial orders after notice and hearing.

nance from the Rhode Island General Assembly.

Approximately five years after the enactment of the ordinance, in March 1984, Joseph Carnevale (Carnevale) filed a complaint with the defendant, Providence Human Relations Commission (commission), alleging that the plaintiff, Women & Infants Hospital (hospital), failed to hire him for an advertised position as a boiler operator because of his advanced age. The commission notified the hospital that a complaint had been filed against it and that an informal factfinding meeting would be scheduled sometime in the future. In response the hospital advised the commission that it would take no part in the meeting because the ordinance was invalidly enacted and therefore void. Thereafter, in November 1984, the commission issued a subpoena duces tecum commanding the hospital to bring certain records and appear before the commission in connection with Carnevale's charge.

The hospital then filed a complaint in Providence Superior Court that sought a declaratory judgment as to the validity of the ordinance and equitable relief to enjoin the commission from attempting to enforce the ordinance. In July 1985 a Superior Court justice ruled that any municipality lacking a home rule charter could not enact such legislation as the antidiscrimination ordinance unless it had specific authorization by the legislative branch of our state government. Accordingly, the trial justice issued a preliminary injunction enjoining the commission from conducting any hearings or investigations concerning Carnevale's claim or attempting to enforce the ordinance against the hospital.

The first issue that must be addressed is whether the commission's appeal has been rendered moot. Subsequent to the trial justice's decision, the Providence City Council enacted a new antidiscrimination ordinance, one virtually identical to the 1979 ordinance. *See* Providence Code, §§ 16–51 through 16–84. Both parties to this action agree that the new ordinance is valid by virtue of the powers vested in the city by the Providence Home Rule Charter, which was approved by Providence voters in 1980 and became effective in 1983. The hospital argues that this appeal has been rendered moot because the commission has the authority under the new ordinance to investigate charges of discrimination and to enforce the new ordinance and that therefore the commission has no vested interest in Carnevale's particular claim of discrimination.

■ In taking this position, the hospital overlooks the fact that a viable controversy still exists between the litigants concerning the commission's power to act on Carnevale's discrimination charge. The discriminatory act that Carnevale complains of allegedly occurred in January of 1984. The statute of limitations under both the old ordinance and the new ordinance is 180 days from the date of the alleged discrimination. Thus, Carnevale cannot file a complaint under the new ordinance. If the commission is to act on Carnevale's charge, it can do so only on the basis of the original ordinance. The commission's appeal is therefore not moot.

In 1979 the city of Providence, having not yet adopted a home rule charter, stood as a creature of state having no inherent right of selfgovernment and deriving all its power from the state. *See Marro v. General Treasurer of Cranston*, 108 R.I. 192, 194–95, 273 A.2d 660, 661 (1971). As such, the city's power to enact ordinances was restricted to those legislative powers delegated to it by the General Assembly.[2]

The commission directs this court to two sources that it alleges gave the city of Providence the authority to enact the ordi-

2. The supremacy of the State Legislature is a fundamental tenet of the Rhode Island Constitution. As we have stated:

"[T]he legislature has all of the powers inhering in sovereignty other than those which the constitution textually commits to other branches of our state government and that those that are not so committed, to the extent that they have not been delegated by the legislature to political subdivisions of the state, are powers reserved to the general assembly." *Nugent v. City of East Providence*, 103 R.I. 518, 525–26, 238 A.2d 758, 762 (1968).

nance: G.L. 1956 (1980 Reenactment) § 45–6–1 and P.L. 1940, ch. 832, ch. 1, § 1 through § 8.

Section 45–6–1 prescribes the scope of ordinances that a "non-home rule" municipality may enact.[3] On two previous occasions this court has construed the terms found in the provisions of § 45–6–1. In *State v. Crepeau*, 29 R.I. 340, 71 A. 449 (1908), this court ruled that the predecessor of § 45–6–1 did not confer upon a municipality the authority to enact a building ordinance. Similarly, in *Wood v. Peckham*, 80 R.I. 479, 98 A.2d 669 (1953), it was determined that the predecessor of § 45–6–1 did not authorize the enactment of a municipal ordinance that set guidelines for a proposed location for a trailer camp. As the *Wood* court stated:

"Under [§ 45–6–1] town and city councils are authorized to make ordinances covering specifically certain police matters and regulations, and generally other ordinances of a like nature. In *State v. Crepeau*, 29 R.I. 340 [71 A. 449] * * * it was held that such section did not confer authority on a town to enact building regulations. That decision seems controlling here in so far as [§ 45–6–1] is concerned. If the general clause at the end of that section was not broad enough to permit the enactment of a building ordinance it is difficult to see how it can be construed to cover an ordinance which attempts to leave to the town council the determination of the question whether a proposed location for a trailer camp was suitable and proper." 80 R.I. at 484, 98 A.2d at 671.

Since this court has consistently ruled that § 45–6–1 does not confer upon a municipality the authority to enact ordinances concerning building regulations or the location of trailer camps, it also follows that the trial justice in this controversy properly ruled that § 45–6–1 did not give the city of Providence the power to enact an antidiscrimination ordinance. A similar view is found in McQuillin where it states that although "a municipality must observe and itself not violate constitutional or statutory guaranties of equality of civil rights irrespective of race or social condition, insofar as these guaranties bind municipal governments, a municipal corporation ordinarily is without power to legislate upon, or extend, equality of civil rights." 7 E. McQuillin, *The Law of Municipal Corporations*, § 24.430 at 370 (rev. 3d ed. 1981).

The second source of authority relied upon by the commission is P.L. 1940, ch. 832, ch. 1, § 1 through § 8, which revised and amended the 1866 act incorporating the city of Providence. Section 3 of said act provides that the inhabitants of Providence "may ordain and publish such laws, ordinances and regulations as shall be needful to the good order of said body politic." The commission argues that said section granted to the city of Providence a broader general police power than that possessed by other non-home-rule municipalities.

It is clear, however, that the 1940 legislation is not a home rule charter since it was not referred to and adopted by the electors of Providence. *Opinion to the House of*

---

**3.** General Laws 1956 (1980 Reenactment) § 45–6–1 provides:

"Town councils and city councils may from time to time make and ordain all ordinances and regulations for their respective towns, not repugnant to law, which they may deem necessary for the safety of their inhabitants from fire, firearms and fireworks; to prevent persons standing on any footwalk, sidewalk, doorstep, or in any doorway, or riding, driving, fastening or leaving any horse or other animal or any carriage, team or other vehicle on any such footwalk, sidewalk, doorstep or doorway within such town, to the obstruction, hinderance, delay, disturbance or annoyance of passersby or of persons residing or doing business in the vicinity thereof; to regulate the putting up and maintenance of telegraph and other wires and the appurtenances thereof; to prevent the indecent exposure of any one bathing in any of the waters within their respective towns; against breakers of the Sabbath; against habitual drunkenness; to regulate the speed of driving horses and cattle over bridges; respecting the purchase and sale of merchandise or commodities within their respective towns and cities; to protect burying grounds and the graves therein from trespassers; and, generally, all other ordinances, regulations and by-laws for the well ordering, managing and directing of the prudential affairs and police of their respective towns, not repugnant to the Constitution and laws of this state, or of the United States."

*Representatives,* 79 R.I. 277, 283, 87 A.2d 693, 697 (1952). It was correctly described by the trial justice as "no more than an act to amend the law incorporating the City of Providence." As such, the 1940 legislation bestowed no authority on the city to enact an antidiscrimination ordinance.

The granting of injunctive relief is a matter within the sound discretion of the trial justice. *DeNucci v. Pezza,* 114 R.I. 123, 130, 329 A.2d 807, 811 (1974). A plaintiff is generally entitled to injunctive relief when a municipality seeks to enforce an invalid ordinance. *See C. Tisdall Co. v. Board of Alderman of Newport,* 57 R.I. 96, 188 A. 648 (1936); 6 E. McQuillin, *The Law of Municipal Corporations,* § 20.25 at 61–62 (3d. rev. ed. 1980). We are of the opinion that the trial justice was correct in granting the hospital's request for an injunction and a declaratory judgment.

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.