DECISION
Before the Court is plaintiffs' request for a preliminary and permanent injunction precluding defendants from enforcing Town of Johnston ("Town") Ordinance 965, interfering with plaintiff Casa Di Mario Inc.'s ("Mario's") Class B liquor and other licenses, and from interfering with the live dancers and entertainment presented at Mario's. Jurisdiction is pursuant to G.L. §8-2-13.
 Facts/Travel
Plaintiff, Casa Di Mario Inc. ("Mario's") is a Rhode Island Corporation which operates an establishment, known as "Mario's Showplace," located within the Town of Johnston, Rhode Island. Mario's holds both an Entertainment license, See G.L. §5-22-5, and a Class B liquor license. See G.L. § 3-7-7. In addition to conducting business as an eating and drinking establishment, Mario's presents nude dancing. Plaintiffs Mario and Carol Santilli are the stockholders of Mario's. Plaintiff, Gary LeClerc is a manager of Mario's. The other named plaintiffs are entertainers who perform exotic dancing at Mario's.
On or about February 12, 1996, the Johnston Town Council passed Ordinance 965. Ordinance 965 provided as follows:
 "Nudity on premises where alcoholic beverages are offered for sale.
 A. It shall be unlawful for any person maintaining, owning, or operating a commercial establishment located within the Town of Johnston at which alcoholic beverages are consumed or are offered for sale for consumption on the premises to suffer or permit:
 1. Any female person, while on the premises of the commercial establishment, to expose to the public view that area of the female breast at or below the areola thereof.
 2. Any female person, while on the premises of the commercial establishment to employ any devise or covering which is intended to give the appearance of or simulate such portions of the female breast as described in subsection A.1. above.
 3. Any person, while on the premises of the commercial establishment, to expose to the public view his or her genitals, pubic area, anus, anal cleavage, or anal cleft.
 4. Any person, while on the premises of the commercial establishment, to employ any devise or covering which is intended to give the appearance of or simulate the genitals, pubic area, anus, anal cleavage, or anal cleft.
 B. It shall be unlawful for any female person, while on the premises of a commercial establishment located within the Town of Johnston at which alcoholic beverages are consumed or are offered for sale for consumption on the premises, to expose to the public view that area of the female breast at or below the areola thereof or to employ any devise or covering which is intended to give the appearance of or simulate such portions of the female breast as described herein.
 C. It shall be unlawful for any person, while on the premises of a commercial establishment located within the Town of Johnston at which alcoholic beverages are consumed or are offered for sale for consumption on the premises, to expose to the public view his or her genitals, pubic area, anus, anal cleavage, or anal cleft, or to employ any devise or covering which is intended to give the appearance of or simulate the genitals, pubic area, anus, anal cleavage, or anal cleft.
 D. A violation of said ordinance by the owner or operator of business licensed to sell alcoholic beverages shall be punishable by a fine not to exceed ($500.00) for the first offense and/or the suspension or revocation of said liquor license. Any subsequent violation within three years after a conviction for the same or similar violation shall be punishable by a fine not to exceed ($1,000.00) and/or the suspension or revocation of said liquor license.
 E. A violation of this ordinance by a person other than an owner or operator of the licensed premises shall be punishable by a fine not to exceed ($500) for the first offense and by a fine not to exceed $1,000 for any subsequent violation within three (3) years after a conviction for the same or similar violation.
 F. The invalidity of any section or sections of this ordinance shall not affect the validity of the remainder of the ordinance.
 This ordinance shall take effect upon passage and all ordinances and parts of ordinances inconsistent herewith are hereby repealed." (See Transcript of Johnston Town Council dated February 12, 1996)[1]
At some point, after February 12, 1996, the town sought to enforce Ordinance 965 against Mario's. Plaintiffs allege that on or about March 2, 1996, police officers entered Mario's and cited its owners, its manager, and plaintiff entertainers for violation of Ordinance 965. See Complaint at para. 62-66, 73.
On or about March 5, 1996, plaintiffs filed this civil action requesting immediate injunctive relief. On or about March 6, 1996, Israel, J., granted plaintiff's request for a temporary restraining order ("TRO"). This TRO provided "that the defendants, their agents, servants and employees, are temporarily enjoined and restrained from enforcing Ordinance #965 against Plaintiffs, including prosecution of the Plaintiffs for any previously issued citations, until further order of this court." (See TRO dated March 6, 1996, Israel, J.)
On October 7, 1997, the parties entered into a consent order which purported to resolve the litigation commenced by plaintiffs in March of 1996. Essentially, the various documents provided a resolution of the litigation by permanently enjoining defendants from enforcing as against plaintiffs any present or future ordinances regulating adult entertainment and permitting plaintiffs to expand their operation in accordance with pending applications to the building inspector. See Order Dated October 7, 1997. The consent order was signed by the town solicitor, together with plaintiffs' counsel and co-counsel. Prior to filing the consent order, there had been no formal action by the town council authorizing the settlement, the settlement agreement or the consent order. On or about October 20, 1997, the Johnston Town Council, in executive session, voted to ratify the settlement and, inferentially, the consent order. On October 27, 1997, the town council, in voting to reconsider the settlement, unanimously rejected the settlement encompassed in the consent order.[2] Accordingly, the town moved to vacate the consent order. On or about January 23, 1998 this court granted the defendants' motion to vacate the consent order, dismissal stipulation and settlement agreement.[3] This court, by order, stated that Justice Israel's March 6, temporary restraining order was to remain in effect. (See Order dated January 23, 1998, Silverstein, J.)
Plaintiffs now are properly before this court seeking injunctive relief Plaintiffs argue that Johnston Ordinance 965 was not enacted properly, is violative of G.L. § 3-7-7, is facially unconstitutional and violative of both United States Constitution and Rhode Island Constitution, is overbroad, and finally, that the doctrine of estoppel precludes Johnston from enforcing Ordinance 965 against Mario's.
 Preliminary Injunction
The decision to grant or deny a preliminary injunction falls within the sound discretion of the trial justice. Fund ForCommunity Progress v. United Way, 695 A.2d 517, 521 (R.I. 1997). Recently, in United Way, the Rhode Island Supreme Court articulated the well established standard for denying or granting a preliminary injunction. First, in order to be successful, the moving party must demonstrate a "likelihood of success on the merits." Id. The "likelihood of success" element is satisfied when a moving party is able to present a "prima facie case." Id.
Next, the moving party must show "that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." Id. (citing Brown v. Amaral,460 A.2d 7, 10 (R.I. 1983); Rhode Island Turnpike Bridge Authority v.Cohen, 433 A.2d 179, 182 (R.I. 1981); Coolbeth v. Berberian,112 R.I. 558, 564, 313 A.2d 656, 659 (1974). Finally, the trial justice performs a type of equitable balancing test. The judge "consider[s] the equities of the case by examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief." UnitedWay, 695 A.2d at 521 (citation omitted).
 I. Likelihood of Success on the Merits A. Estoppel
Plaintiffs argue that the doctrine of estoppel precludes the defendants from enforcing Ordinance 965, or any other future enacted adult entertainment ordinances, as against Mario's. Specifically, plaintiffs contend that they expended substantial amounts of money after being assured by various town officials that Mario's would be grandfathered from adult entertainment regulations.[4]
The doctrine of estoppel is rooted in equity. This type of relief is "extraordinary and will not be applied unless the equities clearly must be balanced in favor of the parties seeking relief under this doctrine." Greenwich Bay Yacht Basin Assoc. v.Brown, 537 A.2d 988, 991 (R.I. 1988); See also Ocean RoadPartners v. State, 612 A.2d 1107, 1111 (R.I. 1992). Equitable estoppel can be evoked against private parties as well as governmental authorities. Greenwich Bay, 537 A.2d at 991. Where justice requires, this doctrine may also be applied against administrative agencies and municipal authorities. Id. (citingLoiselle v. City of East Providence, 116 R.I. 585, 359 A.2d 345
(1976); Schiavulli v. School Committee of North Providence,114 R.I. 443, 334 A.2d 416 (1975); Ferrelli v. Department ofEmployment Security, 106 R.I. 588, 261 A.2d 906 (1970)). See alsoTown of Gloster v. Olivo's Mobile Home Court, Inc., 111 R.I. 120, 130, 300 A.2d 465, 471 (1973)). As defined by our state Supreme Court,
 "the indispensable elements of equitable estoppel, or estoppel in pais, are: `first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct did induce the other to act or fail to act to his injury.'" Providence Teachers Union v. School Bd., 689 A.2d 388 (R.I. 1997) (quoting Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)).
"The key element of an estoppel is intentionally induced prejudicial reliance." E. Greenwich Yacht Club v. Coastal Res.Mgt. Council, 118 R.I. 559, 568, 376 A.2d 682 (R.I. 1977) (citingRaymond v. B.I.F. Industries, Inc., 112 R.I. 192, 198-99,308 A.2d 820, 823 (1973)).
"A municipality may, when acting within its authority, be estopped from denying that its acts induced another's detrimental reliance." Technology Investors v. Town of Westerly,689 A.2d 1060, 1062 (1997) (citing Ferrelli, 261 A.2d at 910). The doctrine of estoppel, however, is not applicable when a municipality's acts are "ultra vires." Technology Investors, 689 A.2d at 1062 (doctrine of estoppel is not applicable where town enacted ordinance that was not consistent with a state statute.)But see, Fleet Constr. Co. v. North Smithfield, 713 A.2d 1241
(R.I. 1998) (doctrine of estoppel applicable where town administrator, vested with authority to sign a contract on behalf of town as owner, agrees to a contract modification). A party who contracts with a municipal corporation cannot claim inadvertence or good faith. As stated by our state Supreme Court in Vieira v.Jamestown Bridge Commission, 91 R.I. 350, 163 A.2d 18 (1960):
 "`It is well settled that a municipal corporation, when sued directly on a contract which it is incapable of making, cannot be estopped from taking advantage of its incapacity because the party suing has acted on the contract in good faith, supposing it to be legal, for the reason that any person who contracts with such a corporation, which is a creature of public law, is bound at his own peril to know the extent of its capacity.'" Id. at 23 (quoting Austin v. Coggeshall, 12 R.I. 329, 332 (1879)).
See also Providence Teacher's, 689 A.2d at 392 (union could not rely on board's representations concerning the validity of a contract as the board had no authority to enter into a binding contract absent ratification of the city council).
After hearing the evidence, reviewing the parties memorandum and transcript of hearings, this court finds that the doctrine of equitable estoppel is inapplicable to the case at bar. Although this court does not deny the fact that various town officials may have, at certain points in time, made representations to plaintiffs and their representatives, only the town council may have had the authority to agree to grandfather Mario's from any adult entertainment regulations.
Finally, this court does not find any evidence that plaintiffs have expended sums of money or otherwise changed their position, having been induced by the actions of town officials, for which the town is chargeable. This court finds that plaintiffs' expenditures were for items in the ordinary course of business, See Exhibits 24 25, dated May 4, 1998, and as such declines the invitation to apply this form of extraordinary equitable relief.
 Authority to Enact
Plaintiffs argue that at the time Ordinance 965 was passed, the Town of Johnston lacked authority to restrict the entertainment at Mario's. Plaintiffs argue that the 1993 version of § 3-7-7.3 was not applicable to Johnston, thus making the Supreme Court's holding in Chernov Enterprises, Inc. v. Scuncio,107 R.I. 439, 268 A.2d 424 (1970) controlling.
States have the power to regulate alcohol in inappropriate places by and through a valid exercise of police power. 44Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 515, 116 S.Ct. 1495, 1514, 134 L.Ed.2d 711 (1996). As stated by our state Supreme Court in Lyons v. Liquor Control Administrator,100 R.I. 573, 576, 218 A.2d 1, 3 (1966), "that an alcohol beverage licensee holds his license subject to regulatory restriction, however burdensome, when adopted pursuant to a valid exercise of the police power is so well settled as to require neither discussion nor citation of authority." Thus, in deciding whether Johnston Ordinance 965 was properly enacted, it is necessary to determine whether the Rhode Island General Assembly had delegated this type of authority to municipalities.
Section 3-7-7 of the Rhode Island General Laws discusses what is referred to as a retail Class B liquor license. The statute delineates the rights of and limitations imposed upon a Class B license holder. See Chernov, 268 A.2d at 425. Although the statute contains no language which "permits or prohibits nude dancing in [a] licensed beverage premises," El Marocco Club,Inc., v. Kenneth Richardson, C.A. 97-1571, May 8, 1997, Israel, J, the statute does make mention of the term "dances." As specifically stated in G.L. § 3-7-7, "holders of licenses shall not be permitted to hold dances within the licensed premises, unless proper permits have been properly obtained from the local licensing authorities."
In Chernov, the Rhode Island Supreme Court had the occasion to interpret § 3-7-7[5] and most importantly, the language which refers to dances. In Chernov, the plaintiff, a Class B liquor license holder, sought permission from the bureau of licenses to have a rock group and a singer perform at his night club and to charge admission for the performances. Id. at 425. Plaintiffs application was denied, thus precipitating an appeal to the Rhode Island Supreme Court.
In reviewing § 3-7-7, the court noted the fact that a class B license holder has been allowed, over the years, to provide patrons with a melange of entertainment including "exotic dancers." Id. at 426. This, of course, was subject to the condition that the entertainment "be incidental to the principal business of providing food and drink to patrons, that no separate
charge[6] be made for it, that the licensing provisions of chap. 22 of title 5,[7] be complied with, and that the safety and obscenity standards established by § 5-22-5 as amended, be satisfied." Id. at 426. Interpreting § 3-7-7, the court concluded:
 "That portion of § 3-7-7 which provides that a Class B licensee `* * * shall not be permitted to hold dances within the licensed premises, unless proper permits have been properly obtained from the local licensing authorities' does not refer to the incidental kind of entertainment which may be provided for patrons while they are dining and for which they pay no separate charge. Instead it refers to the holding of dances to which admission can be obtained only by the payment of a separate fee or charge, and it allows that kind of dancing, even though not incidental to the principal activity of an innkeeper, to be held on the premises of a Class B licensee." Id. at 427.
The Supreme Court upheld the Bureau's decision denying Chernov's request. Id.
In 1993, § 3-7-7.3 was added to Title 3 of the Rhode Island General Laws which deals with alcoholic beverages. See
P.L. 1993, Ch. 374, § 1. This new section, which provided for restrictions on entertainment for Class B licenses holders, arguably abrogates Chernov, giving cities and towns, who had not previously issued Class B licenses, the ability to restrict or prohibit entertainment in newly licensed facilities. The 1993 version of § 3-7-7.3 provided:
 Class B licenses — Restriction on entertainment. —
 Notwithstanding any provision of this chapter or in the Rhode Island General Laws to the contrary, in the case of any city or town which prior to July 1, 1993 had not previously issued any retailer's license, Class B, such city or town may restrict or prohibit entertainment at such newly licensed facilities, provided that any such restriction(s) or prohibition applies uniformly to all such newly licensed facilities.
In 1997 § 3-7-7.3 was amended and expanded. The amended version, effective March 25, 1997, changed the language of the former § 3-7-7.3 to include any city or town which issues Class B licenses. This current version of § 3-7-7.3 provides:
 Class B licenses — Restriction on entertainment.
 "Notwithstanding any provision of this chapter or in the Rhode Island General Laws to the contrary, in the case of any city or town which issues any retailer's license, Class B, such city or town may restrict or prohibit entertainment at such licensed facilities, provided that any such restriction(s) or prohibition applies uniformly to all such licensed facilities. See P.L. 1997, ch. 9 § 1.[8]
This court finds that after § 3-7-7.3 was amended, the town of Johnston possessed plenary authority to pass Ordinance 965. When Ordinance 965 was passed, however, the former §3-7-7.3 was still in full force and effect. A review of the 1991 annual report issued by the Liquor Control Administrator clearly indicates that Johnston had been issuing Class B liquor licenses prior to 1993. See 1991 Annual Report of Liquor Control Administration at 9. Thus, the 1993 version of § 3-7-7.3 gave Johnston no power or authority to restrict the entertainment at Mario's.
Having no authority to pass ordinance 965 either on February 12, 1996 or January 13, 1997, this court finds that the present ordinance 965 is invalid and unenforceable. Mindful of the teachings espoused in Women Inf. Hosp. v. City Of Providence,527 A.2d 651 (R.I. 1987), that is, "a plaintiff is generally entitled to injunctive relief when a municipality seeks to enforce an invalid ordinance," Id. at 654 (citing C. Tisdall Co.,v. Board of Alderman of Newport, 57 R.I. 96, 188 A. 648 (1936), plaintiffs' request for preliminary injunctive relief is granted. The court, being satisfied that plaintiff has established the necessary predicate under the United Way decision, need not reach plaintiffs other arguments at this time. Accordingly, defendants are preliminarily and permanently enjoined from enforcing Ordinance 965 as enacted on February 12, 1996 and January 14, 1997.
Counsel shall submit an appropriate order and judgment for entry consistent with the provisions thereof.
[1] This ordinance was adopted a second time at a recessed meeting of January 13, 1997 held on January 14, 1997.
[2] Article IX of the Rules of Council provides a 30 day window of opportunity for reconsideration of votes of the council.
[3] Plaintiffs filed a notice of appeal with the Rhode Island Supreme Court, See Supreme Court Docket Entry Dated February 11, 1998, after which defendants filed a motion to dismiss. Id. at Entry Dated March 12, 1998. On April 17, 1998, the Supreme Court issued an order granting defendants' motion to dismiss the appeal which was procedurally improper. See Order Dated April 17, 1998.
[4] Defendants argue inter alia that the law of the case doctrine applies to the issue of estoppel in light of this courts previous decision vacating the October 7, 1997 settlement agreement. The previous matter dealt with town solicitor's authority to authorize settlement on behalf of the town. Since this Court feels that the issue currently before the court differs from that presented during the motion to vacate, application of this doctrine is not warranted. See Richardson v.Smith, 691 A.2d 543 (R.I. 1997).
[5] G.L. § 3-7-7 has been amended since Chernov; however, the same language referring to dances remains in the present day statute.
[6] This portion of the holding in Chernov was changed by legislative amendment. See P.L. 1971, ch. 153; 28 Prospect HillSt., Inc. v. Gaines, 461 A.2d 923, 924, fn. 1 (R.I. 1983) ("The authorizing of cover, minimum, or door charges was the legislative response to our holding in Chernov, where we noted that a Class B licensee could not insist on a separate charge or fee for patrons who might wish to witness or participate in the entertainment being offered by a licensee.")
[7] Chapter 72, entitled Town of Johnston — Nudity On Premises Where Alcoholic Beverages Are Offered For Sale Or Consumption, was added to Title 5 of the Rhode Island General Laws. See 1997 R.I. Pub. Laws 97-009. These new sections, effective March 25, 1997, provided:
 "5-72-1. General provisions. — (a) It shall be unlawful of any person maintaining, owning, or operating a commercial establishment located within the town of Johnston, at which alcoholic beverages are offered for sale or consumption on the premises, to, without a license pursuant to § 5-72-2:
 (1) Suffer or permit any female person, while on the premises of said commercial establishment, to expose to the public view that area of the human breast at or below the areola thereof.
 (2) Suffer or permit any female person, while on the premises of said commercial establishment to employ any device or covering which is intended to give the appearance of or simulate such portions of the human female breast as described in subsection (a)(1).
 (3) Suffer or permit any person, while on the premises of said commercial establishment to expose to public view his or her genitals or pubic area.
 (4) Suffer or permit any person, while on the premises of said commercial establishment, to employ any device or covering which is intended to give the appearance of or simulate the genitals or public area.
 5-72-2. Licensure and regulations. — (a) The town council of the town of Johnston shall, in addition to the licensing and regulatory powers enumerated in title 5, have the power to license any establishment where nudity is permitted on the premises and alcoholic beverages are offered for sale or consumption on the premises.
 (b) The town council shall have the power to limit the hours of operation of any such establishment and may designate specific areas within the town of Johnston where nudity on the premises where alcoholic beverages are offered for sale or consumption on the premises may be permitted and/or to prohibit the operation of any new such establishment after [March 25, 1997].
 5-72-3. Revocation of license. — If the owner, operator, licensee, lessor, lessee, manager, employee or any other person participating in the operation of an establishment located within the town of Johnston at which alcoholic beverages are offered for sale for consumption on the premises shall violate or be in violation of any of the provisions of this section, the town council may revoke the license for said establishment after giving a reasonable notice thereof to the holder of said license and affording the holder an opportunity to be heard as to why the revocation should not be issued.
 5-72-4. Severability. — If any provision or part thereof of this chapter, or application thereof to any person or circumstances be held unconstitutional or otherwise invalid, the remaining provision of this chapter and the application of the provision to other person or circumstances other than those to which it is held invalid, shall not be affected thereby."
[8] See also Explanation by the Legislative Council of An Act Relating To Businesses And Professions — Town of Johnston. 97-S0899 Substitute A As Amended.
 "This act would allow the Town of Johnston to license and regulate establishments which allow nudity on the premises where alcoholic beverages are sold and consumed. This act would also expand the scope of the section permitting restrictions on entertainment for Class B licenses to include all licensed facilities."