DECISION
This is an appeal from a decision of the Liquor Control Administrator in the Department of Business Regulation vacating a decision of the Board of License Commissioners of the city of Pawtucket granting the transfer of a Class A liquor license. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel
The Class A and Class E licenses encircling this controversy were first issued to George O. Breault, d/b/a Breault's Pharmacy, 675 Main Street, Pawtucket in 1935. In 1961, Breault moved the location of his pharmacy to 150 Mineral Spring Avenue and as such, transferred his license. (See Pawtucket Board of License Commissioners Meeting dated September 6, 1961). On November 25, 1970, Breault's A E license was somehow split. The Class A license was transferred to Michael Kanakry, d/b/a, Four Comer Liquor Store located at 689 Broadway, Pawtucket (See Pawtucket Board of License Commissioners meeting dated November 25, 1970). Mr. Kanakry held the Class A license for a short time and then in 1971, transferred it to the Rhode Island Prescription Center, Inc. (James Mancini) located at 275 Newport Avenue, Pawtucket (See Pawtucket Board of License Commission Meeting dated September 22, 1971). On the same day the Pawtucket Board approved the transfer from Mr. Kanakry, Rhode Island Prescription Center was issued a Class E license.
Rhode Island Prescription Center renewed its Class A E license for over twenty years. On October 11, 1995 the Pawtucket Board of License Commissioners approved the transfer of only its Class A license to Mancini Liquors Inc., located at 267 Newport Ave, Pawtucket. Beverage Hills, then a Class A license holder, previously objected. This license split gave rise to the present controversy.
An appeal was heard before the Liquor Control Administrator on December 14, 1995.[1] Mr. Mancini was present and testified that he purchased a full privilege Class A liquor store license in 1971 from Four Corner Liquor for $5,000. (Tr. 40-1). Although he was a licensed pharmacist, Mancini stated his intention was to operate a liquor store with that license at an appropriate time in the future. (TR. 40). Mr. Mancini testified that he sold liquor with his Class A license directly out of his pharmacy (Tr. 45). The pharmacy did not have a separate location or entrance from the package store area. (Tr. 45). There was no partition to separate the alcohol from the pharmacy (Tr. 52-3).
The Liquor Control Administrator ultimately vacated the decision of the City of Pawtucket. The Administrator found that Rhode Island Prescription existed with A E characteristics for over 20 years and as such, legally could not transfer its Class A license in accordance with G.L. (1956) § 3-7-5.
Appellants, the City of Pawtucket, Pawtucket Board of License Commissioners and Mancini Liquors, Inc., are now before this court. Appellants contest the ruling of the Liquor Control Administrator. Specifically, appellants argue that R.I. Prescription Center Inc.'s Class A license was not obtained in accordance with § 3-7-5 and as such, was fully transferable pursuant to G.L. § 3-5-19.[2] Further, appellant Mancini contends he was a bonafide purchaser for value of his Class A liquor license and as such, is entitled to constitutional property rights.
 Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L § 42-35-1 5(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (Quoting Caswell v.George Sherman Sand Gravel Co., 1 20 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v.Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 The Class A License
A Class A liquor license obtained in accordance with G.L. 1956 § 3-7-3 of the Rhode Island General Laws allows the holder "to keep for sale and to sell at the place therein described beverages at retail and to deliver the same in a sealed package or container." G.L. 1956 § 3-7-3. This type of license, appropriate for liquors stores, is subject to restrictions.
 "The holder thereof, if other than a person entitled to retail, compound and dispense medicines and poisons shall not, on the licensed premises engage in any other business, keep for sale or sell any goods, wares, merchandise or any other article or thing except the beverages authorized under this license and non-alcoholic beverages; . . . and provided further, however, that no Class A license shall be granted for any premises unless the premises shall constitute a separate store, the entrance or entrances to which shall be exclusively from the street or streets or arcade; . . . The premises aforementioned shall have opaque walls which shall completely partition and sever said premises from any adjoining market, concession or business . . . ."
The legislature has set limits on the number of Class A licenses that can be issued. G.L. 1956 § 3-5-16. A license held pursuant to G.L. 1956 § 3-7-3 may be transferred. G.L. 1956 § 3-5-19.
The Class E License and Class A license Issued to Class E License
In contrast to the section 3-7-3 Class A license described above, a Class E license "authorize[s] a person entitled to retail, compound, and dispense medicines and poisons to keep for sale and to sell at the place therein described beverages not to exceed one (1) quart each for medicinal purposes and only upon the prescription of a duly licensed practicing physician." G.L. 1956 § 3-7-13. A Class E license is necessary to operate a pharmacy. The Legislature has afforded the Class E license holder who "maintains, operates, manages or conducts a drug store." the privilege of also holding a "retailer's Class A license." G.L. 1956 § 3-7-5. This special type of Class A license, held in conjunction with a Class E license, is often referred to as an A E license. The Class A E license issued to pharmacists is unique. The Class A license issued to a Class E holder cannot be transferred to one who is not entitled to hold a Class E license. R.I. Code R. 02 040 016 (Rule 2);[3] See also BarringtonLiquors v. Board of License, 1992 R.I. Superior 263 (1992).
The Rhode Island Supreme Court addressed the issue of transferability of the pharmacist's Class A license. Romano v.Daneker, 78 R.I. 79, 79 A.2d 175 (1951). P.L. 1949, chapter 2373 § 3 abolished what was once referred to as a "limited" Class A license. A "limited" class A license gave a druggist, holding a Class E license in a city or town having a population of less than 10,000 inhabitants, the privilege of selling liquor in a drugstore. This privilege, was of course, subject to restrictions. Upon enactment of this new public law, a former "limited" Class A license holder now had the ability to obtain a Class A license.
This new license, referred to by our state's Supreme Court as a "special Class A license," served as "compensation" for the loss of the "limited" Class A license. Romano, 78 R.I. at 82. Although the Court acknowledged that the privileges obtained under the new Class A license were "broader" than those of its predecessor, it did not perceive the legislature as "intend[ing]" the new Class A license to be freely transferable. Our Supreme Court noted that
 "In fact such a construction would give the licensee in the instant case a freely transferable class A license which it could not otherwise have obtained under the quota established in the town . . . . While the legislature intended that such licensees should personally have the right to obtain a class A license notwithstanding the fixed quota therefor in any city or town, in our opinion it did not intend to authorize the transfer of such a privileged license to one who neither conducts a drugstore nor holds a druggist's Class E license." Romano, 78 R.I. at 83.
In his eleven page decision, the Administrator found that Rhode Island Prescription had Class A/E characteristics for over 20 years. "It is also a well-recognized doctrine of administrative law that deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency." Pawtucket Power Assoc. v. Pawtucket, 622 A.2d 452, 456 (1993) (citations omitted). Records of the Pawtucket city clerk show that Rhode Island Prescription renewed its Class A and Class E licenses from 1971 to 1995. The Class E license was issued the same day that Rhode Island Prescription acquired its Class A license. The Administrator further found that the Rhode Island Prescription operated its business as an A E within § 3-7-5, not, § 3-7-3. Additionally, the Administrator concluded that the Rhode Island Prescription did not comply with the requirements of § 3-7-3. There was neither a separate location or entrance from the package store area, nor was there a partition to separate the alcohol from the pharmacy (Tr. 45, 52-3).
The legislature has differentiated between a holder of a §3-7-5 A E license and a holder of a Class A license issued pursuant to § 3-7-3. The unlawful splitting of an A E license coupled with the prior approval of the local board does not convert it to a Class A liquor license. Rhode Island Prescription's license was reestablished as lawful when it obtained its Class E license. Since Rhode Island Prescription enjoyed the benefits of an AE operation, it was required to comply with burdens of § 3-7-5 and RI Code Rule 2. Accordingly, the Administrator's finding that the Class A license held by Rhode Island Prescription cannot be transferred independent of the Class E license is supported by the reliable, substantial, and probative evidence of the record.
 Constitutional Property Right
Additionally appellant Mancini (Rhode Island Prescription Center), relying on Burton v. LeFebvre, 72 R.I. 478,53 A.2d 456 (1947), argues that he was a bona fide purchaser for value of his Class A liquor license and as such, is entitled to constitutional property rights. Appellant's reliance on Burton
is misplaced.
Although this court, like the Burton court, recognizes that a liquor license has "some of the aspects of a property right,"Id. at 460, this court is also mindful of the police powers of the state with respect to the sale of alcohol. In Tisdall, our Supreme Court noted that
 "It is well settled in this state and elsewhere that the business of the sale of intoxicating liquor is so clearly and completely subject to exercise of the police power of the State that it may even be entirely prohibited by the State (citations omitted), . . . or it may be permitted subject to such restrictions and burdens, however great, as the State legislature may deem it advisable to impose, so long as they are not discriminatory in such a way as to be in violation of the equal protection clause of the fourteenth amendment and the procedure is not such as to violate its due process clause." Tisdall Co. c. v. Board of Alderman c., 57 R.I. 96, 104, 188 A. 648 (1936).
As through its enactment of G.L,. 1956 § 3-7-5, the state legislature has chosen to restrict the transfer of licenses issued, appellant Mancini's argument is unavailing.
After review of the entire record, this Court finds that the decision of the Liquor Control Administrator is supported by the reliable, probative, and substantial evidence of record, and substantial rights of the appellant have not been prejudiced. Accordingly, that decision is hereby affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] G.L.(1956) § 3-7-21 grants the power of appeal from local boards to the liquor control administrator. This hearing is de novo.
[2] On July 25, 1997, a motion to intervene was granted to Costa Liquors. Costa received transfer of a Class A liquor license from Beverage Hill Liquors.
[3] Rule 2 provides specifically that "A Class A alcoholic beverage license issued to the holder of a Class E alcoholic beverage license pursuant to 3-7-5 is not transferable except to another holder of a Class E license." Further, the Rule provides that "no alcoholic beverage may be sold on the premises where a class A and E License is located unless a licensed pharmacist is on the premises and available to dispense prescription medicines."